In the Matter of the Application for the DISCIPLINE OF Paul L. SIMONSON, an Attorney at Law of the State of Minnesota.

No. C0–82–1654.

Supreme Court of Minnesota.

March 25, 1988.

William J. Wernz, Director of Lawyers Professional Responsibility, Thomas C. Vasaly, First Asst. Director, St. Paul, for appellant.

Edward Lynch, South St. Paul, for respondent.

PER CURIAM.

A Petition for Disciplinary Action was brought against Paul L. Simonson by the Director of the Office of Lawyers Professional Responsibility ("Director"). The referee recommended that Simonson be suspended indefinitely from the practice of law and that reinstatement be subject to certain conditions. On the record before us, we order disbarment.

Simonson was admitted to the practice of law in 1972. He has been in sole practice since 1983, focusing on tax and business law. He has a degree in accounting, is a Certified Public Accountant and at one point was an agent for the Internal Revenue Service.

Simonson has been disciplined by this court on a previous occasion for misappropriation of client funds in 1982. After a hearing on that petition, held in February 1984, the referee there found conversion of client funds in violation of the Code of Professional Responsibility. The referee also found substantial mitigating factors: voluntary disclosure to the Director even though the misconduct might otherwise have gone undetected, disclosure to all major clients, cooperation with the investigation, strong evidence of good character, and full restitution. The referee recommended a public reprimand and a fine of $5,000. Simonson represented to the referee and to this court in his brief that "[t]he alleged misconduct has not continued after the investigation of the Board began." He also stated that "[his] conduct since his original transgression has indicated that the Board and the public can be assured that such transgressions will not happen again." Based on these representations, we found that his 1982 misappropriation was "an episode which was an exception to an otherwise ethical professional life." *In re Simonson,* 365 N.W.2d 259, 262 (Minn.1985), followed the referee's recommendation and ordered a public reprimand and a $5,000 fine.

The present petition for disciplinary action alleged, Simonson admitted and the referee found four counts of misconduct.

1. *Trust Account Misappropriations.* In July, 1984, Simonson misappropriated funds in the approximate amount of $20,-000 from his trust account. Simonson's trust account, as of June 1985, was short approximately $14,000 of funds to be held in trust for Northtown Sunrise, Inc. Simonson misappropriated to his own benefit approximately $14,000 from the Northtown project. This conversion of client funds violated Disciplinary Rules DR 1–102(A)(4), DR 7–101(A)(3), and DR 9–102(B)(4), Minnesota Code of Professional Responsibility.

2. *Nelson Misappropriation.* In September, 1984, Simonson received approximately $3,500, from an elderly client, Hulda Nelson, to prepare tax returns and pay taxes owing. He did not pay the taxes due the IRS from Hulda Nelson nor deposit the funds of Hulda Nelson into his trust account but rather misappropriated those funds to his own benefit. This misappropriation of client funds was in violation of Disciplinary Rules DR 1–102(A)(4), DR 7–101(A)(3), and DR 9–102(B)(4), Minnesota Code of Professional Responsibility.

3. *Payroll taxes.* Simonson discontinued making required federal and state payroll for his professional corporation in June 1983. The taxes were withheld from employees but retained in the general office account and not paid to the IRS or the State of Minnesota. Simonson did not dispute that his professional corporation owed approximately $35,000 in unpaid payroll taxes to the IRS. Simonson's failure to pay payroll taxes with his respect to his professional corporation violated Disciplinary Rule DR 1–102(A)(6), Minnesota Code of Professional Responsibility.

4. *Maintenance of Books and Records.* Simonson has not maintained required busi-

ness and trust account books and records. He testified that after his office manager quit in 1983, his records were not well kept, despite his certification in October 1984 that his books and records were in good shape and in compliance with the rules. He did not keep a ledger or a daily cash register. As a result of his failure to maintain current trust account records, an unintentional shortage in the trust account funds of approximately $2,500.00 occurred on February 3, 1984. Simonson's failure to maintain appropriate and required business and trust account records violated Disciplinary Rule DR 9–104(A), Minnesota Code of Professional Responsibility.

Simonson disclosed to the Lawyers Professional Responsibility Board his misappropriation from his client trust account and from his client Hulda Nelson, and his payroll tax nonpayment. This disclosure was made on the same day he had been called by the Director and asked to appear before the Board concerning his check in partial payment of his disciplinary fine that was returned for insufficient funds. The referee found this disclosure to be voluntary.

Simonson made his books and records available to the Office of Lawyers Professional Responsibility, he reconstructed the transactions, and he met with the Director's office several times to go over them. The referee found that Simonson was truthful and accurate in his dealings with the Director's office during the investigation.

Simonson agreed to withdraw from active practice at the time that he went to the Board and this court ordered his temporary suspension. He notified a number of clients by mail and filed an affidavit with the court that he had notified all clients being represented in a pending matter, but he did not notify client Hulda Nelson until two weeks before the hearing.

A hearing was held on July 23 and August 1, 1986, before referee Roland Faricy, Judge of Ramsey County District Court. The transcript of the earlier disciplinary hearing was not before the referee.

Simonson has never challenged the allegations and findings of misconduct. Rather he presented evidence at the hearing solely in mitigation, claiming alcoholism and depression to be the cause of the misconduct.

Simonson testified that he had started drinking in high school and had had an alcohol problem all his adult life. He had been in treatment four times: in 1977, staying sober for three months after the treatment program; in 1979, staying sober till December 1980, when he drank heavily for several months and then off and on; in 1984, not long after his first disciplinary hearing, staying sober for three months; and in November 1985. He claimed he was still sober at the time of the hearing in July and August 1986.

His life began to fall apart, he testified, starting December 1980; his work suffered and his financial problems increased. At the time of his misappropriation in 1982, he said, he was not caring what was right or wrong and had given up hope for the future. He took serious steps toward suicide in 1984 and 1985. According to Simonson, in the fall of 1985, when he was drinking heavily, and around the time he was asked to appear before the Board to explain an insufficient funds check he had sent in payment on his fine, he woke up one morning at 4 a.m. in a motel and realized that he had to commit suicide or face his problems. He went that same morning to talk to his minister and, with the minister, went to the Lawyers Professional Responsibility Board, where he disclosed his misconduct.

He also went for alcoholism treatment and counseling. He successfully completed the primary and secondary phases of chemical dependency treatment. At the time of the hearing in July and August, 1986, he indicated he was attending Alcoholics Anonymous regularly, at least one meeting a week, and was in weekly contact with his Alcoholics Anonymous sponsor. While he had been in Alcoholics Anonymous before, he had not been in counseling and he indicated that he was now dealing with problems that he had not dealt with before.

The referee found that Simonson's alcoholism and depression were substantial causes of his misconduct. He recommended that Simonson's current suspension from the practice of law be continued indefinitely with reinstatement subject to a number of specific conditions. The Director, however, ordered a transcript of the hearing and contends there is not clear and convincing evidence in the record to support the referee's finding that Simonson's misconduct was caused by alcoholism and psychological problems. The Director strongly argues that disbarment is the appropriate discipline for an attorney who engages in extensive misappropriation of client funds before, during, and after a prior disciplinary proceeding. He points to a number of aggravating factors, including: Simonson's misrepresentation of facts to the court in the first proceeding; his misappropriation of funds throughout the first proceeding, in some cases from the very clients he had called as character witnesses; and his false certification in his October, 1984 attorney registration that his books were in good order.

The issue before us is what discipline should be imposed under the circumstances of this case. Great weight is given to the recommendation of a referee concerning disciplinary sanctions. *In re Franke*, 345 N.W.2d 224, 228 (Minn.1984). The factual findings of the referee are also given great weight. *In re Getty*, 401 N.W.2d 668, 670 (Minn.1987). The final responsibility for appropriate attorney discipline, however, lies with this court. *In re Fling*, 316 N.W. 2d 556, 559 (Minn.1982). The purpose of discipline is not to punish the lawyer but to guard the administration of justice and to protect the courts, the legal profession, and the public. *In re Heffernan*, 351 N.W.2d 13, 15 (Minn.1984).

This court has found that disbarment is appropriate for extensive misappropriation of client funds, unless there are mitigating circumstances which justify a less severe sanction. *In re Parks*, 396 N.W.2d 560, 563 (Minn.1986); *In re Heffer-*

*nan*, 351 N.W.2d 13, 14 (Minn.1984); *In re Austin*, 333 N.W.2d 633, 635 (Minn.1983). Simonson's misappropriation of his clients' funds is extensive and serious.

Simonson's misconduct is aggravated by the fact that he has previously been before this court for a similar offense. After a disciplinary proceeding, this court expects a renewed commitment to comprehensive ethical and professional behavior. *In re Shaw*, 396 N.W.2d 573, 575–76 (Minn.1986). Simonson, however, failed to put his financial house in order, continued to misappropriate client funds, was behind in tax payments, and failed to keep adequate books and records. It is especially offensive that Simonson was misappropriating money, with his finances in a shambles, at the very time that he was before the referee and this court in 1984 indicating that there were no financial problems and that his books were in order. Disbarment is appropriate unless there are mitigating circumstances.

Simonson urges that his alcoholism and depression should be considered mitigating circumstances. This court has adopted the following criteria for evaluation of alcoholism as a mitigating factor:

1. That the accused attorney is affected by alcoholism.

2. That the alcoholism caused the misconduct.

3. That the accused attorney is recovering from alcoholism and from any other disorders which caused or contributed to the misconduct.

4. That the recovery has arrested the misconduct and the misconduct is not apt to reoccur.

5. That the accused attorney must establish these criteria by clear and convincing evidence.

*In re Johnson*, 322 N.W.2d 616, 618 (Minn. 1982). Similar criteria are used for psychological disability. *In re Weyhrich*, 339 N.W.2d 274, 279 (Minn.1983). Critical to our determination is the second criterion,

which relates to causation. *In re Johnson,* 322 N.W.2d at 618.

In finding a causal connection between misconduct and alcoholism, one important consideration is the correlation in time between the two. When an attorney's behavior is of a high standard before the abuse of alcohol or after the beginning of abstention, this court is more likely to find that the misconduct was caused by the alcoholism. *See In re Isaacs,* 406 N.W.2d 526, 529 (Minn.1987) (most of misconduct occurred during four-year period before attorney stopped drinking); *In re Johnson,* 322 N.W.2d at 617 (referee found exemplary behavior before abuse of alcohol); *In re Nordstrom,* 264 N.W.2d 629, 631 (Minn. 1978) (final disposition deferred so that attorney could demonstrate further sobriety); *see also In re Driscoll,* 85 Ill.2d 312, 53 Ill.Dec. 204, 423 N.E.2d 873 (Ill.1981) (attorney's behavior exemplary before he began drinking heavily and for the two and one-half years since he had stopped drinking); *In re Walker,* 254 N.W.2d 452, 457 (S.D. 1977) (misconduct primarily prior to beginning of total abstention two and one-half years before). Simonson, however, has had an alcohol problem all his adult life, and had been sober for less than a year at the time of the hearing before the referee. There is no significant period of sobriety to compare with his period of alcoholism. No conclusion can be drawn from this about causation.

Simonson has not established causation by clear and convincing evidence. The witnesses whose testimony was relevant to the question of causation were Simonson himself, his psychologist, and his chemical dependency counselor. Simonson testified that alcoholism and depression led him simply not to care what was right or wrong, not to keep adequate books and not to pay the withholding tax to the IRS. Simonson's credibility with this court is low be-

cause of his misrepresentation to us during the prior disciplinary proceeding. We also stated in *Johnson* that "[i]t is not sufficient that the accused lawyer states that alcoholism was the cause of his or her dereliction." 322 N.W.2d at 618–19.

Simonson's psychologist testified that, in general, alcoholism and depression can be a contributing cause of misconduct and mentioned as a characteristic the failure to see the consequences of one's actions, but he declined to make a definite judgment about causality in this particular case. He also testified that the prognosis for recovery was guardedly positive but was conditional on Simonson's commitment to continued work. Simonson's chemical dependency counselor similarly testified that alcohol dependency can cause or contribute to misconduct and mentioned that some symptoms were lying and making improper judgments. He was not asked about the causal connection in this case. Neither expert said more than that Simonson's misconduct could be caused by his alcoholism.[1] No other evidence of causality was submitted. We have said that medical evidence should not be the sole evidence to be considered. *Id.* at 619. We find that the record in this case, however, does not establish a causal connection by clear and convincing evidence, nor does it establish by clear and convincing evidence that the misconduct is not apt to reoccur.

The referee also found that Simonson had voluntarily disclosed his misconduct to the Director's office and cooperated fully with the investigation. Simonson exhibited the same kind of sincere, helpful behavior during his previous disciplinary investigation and it now appears that it was a sham. We therefore decline to find his disclosure and cooperation mitigating factors here.

On the record before us, we hold that Simonson's conduct merits disbarment.

Disbarment ordered.

---

1. Some jurisdictions do not require a definitive statement by the expert about the causal connection between the particular attorney's alcoholism and misconduct. See *Attorney Grievance Comm'n v. Truette III,* 299 Md. 435, 474 A.2d 211, later opinion 299 Md. 447a, 475 A.2d 1203 (1984); *Attorney Grievance Comm'n v. Finlayson,* 293 Md. 156, 442 A.2d 565 (1982). We need not decide that question here.

COYNE and POPOVICH, JJ., took no part in the consideration or decision of this case.