In re Petition for DISCIPLINARY ACTION AGAINST Reynaud L. HARP, an Attorney at Law of the State of Minnesota.

No. C4–93–2415.

Supreme Court of Minnesota.

March 27, 1997.

Marcia A. Johnson, Director, Office of Lawyers Professional Responsibility, Betty M. Shaw, Sr. Asst. Director, St. Paul, for appellant.

Reynaud L. Harp, Minneapolis, pro se.

## OPINION

PER CURIAM.

This case arises out of a January 1996 Petition for Revocation of Probation and for Further Disciplinary Action, a May 1996 Supplementary Petition for Disciplinary Action, and a July 1996 Second Supplementary Petition for Disciplinary Action filed by the Director of the Office of Lawyers Professional Responsibility (Director) alleging that respondent Reynaud L. Harp (Harp) engaged in misconduct including: failure to comply with numerous terms of an October 14, 1994, order placing Harp on four years' supervised probation; client neglect and noncommunication; failure to pay a law-related judgment; failure to file employee withholding tax returns or pay employee withholding or Social Security taxes; failure to file or pay certain federal and state individual income taxes; various trust account violations; failure to return client files; failure to return unearned fees or account for certain fees; the unauthorized practice of law; the abandonment of his law practice; and noncooperation with the Director's Office. Harp answered the January 1996 petition and the May 1996 petition, but failed to respond to the July 1996 petition. On July 3, 1996, this court suspended Harp from the practice of law until final

disposition of the three petitions. On July 11, 1996, the Director petitioned this court for an order appointing her trustee for Harp's abandoned files, and this court appointed the Director trustee on July 15, 1996.

On August 20, 1996, Referee Arthur J. Boylan held a hearing on the three petitions. Harp failed to appear at the hearing and did not file a brief in that proceeding. The referee found [1] that Harp engaged in serious

1. The referee's extensive findings are as follows:
1. Respondent has a substantial disciplinary history including:
   a. A July 6, 1992, admonition for practicing while on CLE restricted status and suspended for non-payment of the attorney registration fee.
   b. A September 2, 1991, private probation for trust account violations including commingling and inadequate books and records and failure to cooperate with a disciplinary investigation.
   c. An October 14, 1994, public reprimand and four years [sic] probation for seven years [sic] failure to timely file state and federal tax returns and pay the taxes thereon when due; failing to cooperate with private probation; failing to cooperate with the disciplinary investigation; and unauthorized practice while suspended for non-payment of the attorney registration fee.
2. Respondent repeatedly failed to comply with the Court's October 14, 1994, public probation order. Respondent's non-compliance included the following:
   a. Respondent failed to timely respond to probation correspondence and provide requested authorizations.
   b. Respondent failed to cooperate with the investigation of additional complaints despite numerous efforts by the Director's Office to obtain his compliance. Respondent's non-co-operation began shortly after he was placed on public probation and has continued up through the time of this hearing.
   c. Respondent failed to comply with the therapy requirements. Respondent failed to continue medication prescribed by psychiatrist Dr. David L. Johnson or to participate in the recommended psychotherapy. Respondent did not resume counseling of any kind until after his meeting with the Director's Office in April 1995. Thereafter, he consulted with psychologist Dr. John Taborn from April to October 1995 but then discontinued counseling.
   d. Despite two reminder letters from the Director's Office respondent failed to timely provide an outline of office procedures.
   e. Respondent failed to cooperate with his supervisor in the monitoring of his private practice.
   f. Respondent failed to provide client inventories to his first supervisor, Clayton Robinson. The inventories respondent provided to his second supervisor, Thomas Muck, were frequently untimely and did not accurately reflect the status of his client matters.
   g. Respondent failed to timely provide trust account books and records to either of his supervisors or the Director's Office despite numerous efforts by the Director's Office to obtain compliance.
   h. Respondent failed to timely provide tax information and authorizations regarding his state and federal individual and employer withholding tax compliance.
3. Respondent engaged in a lengthy pattern of neglecting client matters and failing to communicate with clients. Respondent effectively abandoned his practice by June 1996.
4. Lee Ellen Goodman retained respondent to represent her in the appeal of two conciliation court matters involving a property dispute with her former housemate and to change a vehicle title. Complainant paid respondent a $300 retainer.
5. Respondent failed to change the vehicle title. Respondent failed to timely file a notice for removal of the conciliation court judgments to Hennepin County District Court. His untimely appeal was rejected by the court. Respondent's initial attempt to set the matter for hearing failed because respondent did not file an affidavit of service or proposed order. The court deputy indicated that she had called respondent several times but had not received a response. Respondent's second motion to file a late appeal was heard on May 5, 1994, and denied. Respondent promised Ms. Goodman that he would prepare an appeal of the denial by May 9, 1994. When respondent had taken no action by May 20, 1994, Ms. Goodman discharged him.
6. Peter Reyes and Flossie Menifee retained respondent to represent them in an employment discrimination complaint against Buckbee Mears Company in April 1992. When Reyes and Menifee had not heard from respondent for several months regarding their matter, Peter Reyes telephoned respondent who assured him that everything was proceeding on their case.
7. Respondent did not inform Reyes or Menifee of the defendant's motion for summary judgment or of the hearing on the motion for summary judgment.
8. Respondent met with Reyes and Menifee in September 1993 to inform them of the court's dismissal of their case. At that meeting, Menifee informed respondent that she did not wish to appeal. Reyes informed respondent that he did wish to appeal and respondent agreed to prepare the appeal.
9. The following week, Reyes contacted respondent regarding the status of his appeal. Respondent replied that the paperwork was not yet done. Reyes called respondent again after about a month and a half and was told by respondent's secretary that she was still typing the papers. Respondent never filed the appeal nor did he inform respondent that the appeal period had expired without his never filing the appeal.

10. In March 1995 Patricia Lewis retained respondent to represent her in a defamation action against the Minneapolis and St. Paul Police Departments. Ms. Lewis paid respondent $3,840 in cash.

11. Respondent served and filed a complaint against the Minneapolis and St. Paul Police Departments but failed to respond to the Minneapolis Police Department's June 7, 1995, interrogatories despite numerous promises to Ms. Lewis that he would do so.

12. Respondent failed to return Ms. Lewis' phone calls or to provide an accounting of the $3,840. Respondent has failed to return any unearned portion of the retainer requested by Ms. Lewis.

13. Sharon K. Moore and her husband Markku Majmaki retained respondent to represent them in a tax matter with the Internal Revenue Service. Moore paid respondent a $1,000 retainer. Respondent did not place any portion of the retainer into his trust account.

14. Respondent failed to return Moore or Majmaki's phone calls.

15. In March 1996 the IRS attached Moore's checking account. Moore then discharged respondent and hired another agent.

16. On March 17, 1996, respondent orally promised to return Moore's file and provide her with an accounting of his time. Respondent has not done so, nor has he returned any portion of the $1,000 retainer. Respondent did not responded [sic] to Moore's May 10 or June 3, 1996, letters regarding the return of her file, nor has he returned her numerous telephone messages.

17. Pauletter Shadeko retained respondent in January 1994 in a personal injury matter.

18. Despite respondent's numerous assurances to Shadeko over the last two years that her case would be resolved soon, respondent has not provided her with a copy of a complaint or any correspondence on her behalf. Respondent has failed to respond to Shadeko's phone calls or to the phone calls of her chiropractor.

19. Since the filing of the second supplementary petition for disciplinary action the Director's Office has received complaints from several other clients. Cornelius Brown retained respondent to represent him in a social security disability case. Respondent has not kept him informed of the status of the case and did not return Brown's file.

20. Brown's fiancé, Gail Koslowski retained respondent to represent her regarding a problem with the roof on her new home. Koslowski paid respondent a $500 retainer in September 1995. Respondent was more than 45 minutes late to the March 1996 arbitration hearing without explanation. Respondent failed to subpoena any of the witnesses he had promised Koslowski that he would call thereby substantially prejudicing her case. Respondent did not tell Koslowski that he was on CLE restricted status at the time of the arbitration hearing.

21. Koslowski received a $900 arbitration award which respondent agreed to help her collect. After numerous unsuccessful attempts to reach respondent, Koslowski spoke with respondent by phone. Respondent then told her he was unable to assist her in collecting the judgment because he was not licensed to practice in South Dakota and promised to provide her with the name of a South Dakota attorney. Koslowski called respondent and left numerous messages at his new address. Respondent did not respond.

22. Sandra Young retained respondent in July 1995 to represent her and her daughter, Iisha Bates in a discrimination lawsuit against the Mall of America. Ms. Young last spoke with respondent over the telephone more than two months ago at which time he reassured her that everything was fine with respect to her lawsuit, that a court date had been set for September and that he would be sending her additional papers regarding the lawsuit. Since that time, respondent has not contacted her nor returned any of her telephone messages. Respondent has not returned her file despite several requests from Ms. Young and from her new counsel, Clayton Robinson.

23. Respondent did not inform Sandra Young, Pauletter Shadeko, Cornelius Brown, Gail Koslowski or Patricia Lewis that he had been placed on CLE restricted status on December 22, 1995, or that he was suspended for nonpayment of the attorney registration fee on April 1, 1996, or that he was placed on disciplinary suspension on July 3, 1996.

24. Respondent did not inform Sandra Young, Pauletter Shadeko, Gail Koslowski or Patricia Lewis he had moved his office from First Bank St. Paul to 325 Cedar Street.

25. Clayton Robinson's receptionist Robin Vedeja received at least fifty calls from respondent's clients wanting to know the status of their cases between June 3, 1996, and July 11, 1996. Vedeja gave each caller respondent's telephone number. Several clients called back indicating that they had left voice mail messages at the number but never received a return call. A number of those clients asked Vedeja if there was any way in which she could assist in locating respondent or in obtaining their files.

26. Respondent failed to provide the post office with a change of address form so that a substantial amount of mail was still being delivered to his office in First Bank East. Respondent did not pick up any of his mail after the second week of May 1996.

27. On May 13, 1996, the Director's Office filed an affidavit of non-compliance pursuant to this Court's October 14, 1994, order requesting respondent's temporary suspension from the practice of law pending hearing on the petition for disciplinary action. By order dated July 3, 1996, this Court immediately suspended respondent from the practice of law until final disposition of the disciplinary proceedings pending against him.

28. On July 11, 1996, the Director served and filed a petition for appointment as trustee of client files which respondent had abandoned in storage in the basement of the First National Bank Building. These files and respondent's other personal property were scheduled for de-

misconduct and recommended that Harp be disbarred. The referee's recommendation was based on his conclusion that Harp violated Rules 1.1, 1.3, 1.4, 1.15, 1.16(d), 3.4(c), 5.5(a), 8.1(a)(3), 8.4(b) and 8.4(d) of the Minnesota Rules of Professional Conduct and Rules 25 and 26 of the Minnesota Rules on Lawyers Professional Responsibility. Neither Harp nor the Director ordered a transcript of the hearing, therefore, the referee's findings of fact and conclusions of law are deemed conclusive and the only issue remaining before this court is the appropriate discipline for Harp's violations. *See* Rule 14(e), Rules on Lawyers Professional Responsibility.

On February 6, 1997, this court held a hearing on the Director's petitions. Harp failed to appear at the hearing and did not file a brief with the court.

When determining the discipline to be imposed for attorney misconduct, this court accords great weight to the referee's recommendations; however, we are ultimately responsible for determining the appropriate sanction. *In re Hartke*, 529 N.W.2d 678, 683 (Minn.1995). In making that determination, this court weighs the nature of the misconduct; the cumulative weight of the disciplinary violations; harm to the public; and harm to the legal profession. *In re Jensen*, 418 N.W.2d 721, 722 (Minn.1988). In addition, this court also considers any mitigating or aggravating circumstances. *In re Haugen*, 543 N.W.2d 372, 375 (Minn.1996). An attorney's prior disciplinary history is relevant to the determination of the appropriate sanctions. *Hartke*, 529 N.W.2d at 683. This court looks to similar cases to assist it in determining proper discipline for attorney

struction or disposal by the building's management company for non-payment of storage fees.

29. On July 15, 1996, the Court appointed the Director's Office trustee of respondent's files.

31 [sic]. Respondent retained court reporter Sandra Caturia for services in connection with a litigation matter in 1993. Despite several billing statements respondent did not pay for the court reporting services.

32. On November 23, 1994, Caturia obtained a judgment against respondent in conciliation court for her $895 bill.

33. Despite numerous promised [sic] to pay, respondent still has not satisfied Caturia's judgment.

34. Respondent employed Jane Wirrer for four and a half years as a legal secretary. Respondent has failed to file employee withholding tax returns for Jane Wirrer from at least 1992 through 1995. Respondent withheld amounts from Wirrer's paychecks during that period but made no employee withholding payments to either the Department of Revenue (DOR) or the IRS, nor has respondent paid any social security taxes on Ms. Wirrer's behalf.

35. Respondent employed Cynthia Wirrer during 1995 as a clerical assistant. On several occasions in 1996 Ms. Wirrer requested a W-2 form or a 1099 miscellaneous form. Respondent did not provide either form to Cynthia Wirrer.

36. Respondent has failed to timely file individual state and federal income tax returns for 1992, 1993 and 1994. Respondent failed to pay more than $2,600 in taxes owing on his 1993 federal return. Respondent has not filed state individual income tax returns for 1991, 1992 and 1993. Respondent has past due state tax liabilities of $19,629.95 for tax years 1986 to 1989.

37. By order dated December 22, 1995, respondent was placed on CLE restricted status. Respondent's secretary, Jane Wirrer brought the

court order to respondent's attention but respondent continued to actively represent clients other than close relatives despite the court's order.

38. Respondent provided client inventories to his supervisor, Tom Muck indicating that he was representing numerous clients in January, February, March and April 1996.

39. Respondent was suspended for non-payment of the attorney registration fee due April 1, 1996, yet has continued to practice while suspended.

40. Respondent has twice been disciplined for practice while suspended for non-payment of the attorney registration fee and/or practice while on CLE restricted status.

41. On August 7, 1995, the DOR levied on respondent's trust account and obtained $350.55. Respondent represents that the money was client funds. Respondent's trust account records indicate that $147.77 of the funds belong to client LeRoy Felder. Despite numerous requests, respondent has not identified the client to whom the remaining $202.78 belongs.

42. Respondent has not reimbursed the trust account for the client funds removed from trust by the DOR levy.

43. On March 15, 1995, Patricia Lewis retained respondent to represent her in a defamation claim against the Minneapolis and St. Paul Police Departments. She paid him $340 and signed a poorly drafted retainer agreement. On April 24, 1995, Ms. Lewis gave respondent $3,500 in cash. Under the interpretation of the retainer agreement most favorable to respondent, $2,840 should have been placed in respondent's trust account. Respondent did not place any of the funds in trust but used the money to pay personal and business expenses.

44. Respondent did not place any of the $1,000 retainer paid by Sharon K. Moore in his trust account.

misconduct. *In re Sigler,* 512 N.W.2d 899, 901 (Minn.1994). Although we attempt to be consistent with sanctions, prior disciplinary case law is helpful only as an analogy because the court "examines each case individually and imposes the discipline it believes appropriate based on the unique circumstances of each case." *Hartke,* 529 N.W.2d at 683.

 "The purpose of discipline is not to punish the lawyer but to guard the administration of justice and to protect the courts, the legal profession, and the public." *In re Simonson,* 420 N.W.2d 903, 906 (Minn.1988) (citation omitted). The protection of the public is paramount. *See In re Walker,* 461 N.W.2d 219, 222 (Minn.1990). In order to protect the public, disbarment is an appropriate sanction for continuing patterns of serious misconduct. *See In re Isaacs,* 451 N.W.2d 209, 212 (Minn.1990) ("We generally require a continuing pattern of serious professional misconduct before disbarring an attorney."); *see also In re Weems,* 540 N.W.2d 305 (Minn.1995) (disbarring attorney for violating terms of his probation, misappropriation of client funds, noncooperation, and exhibiting a pattern of neglect, noncommunication, and failure to return client files and unearned retainers); *In re Pang,* 522 N.W.2d 921 (Minn.1994) (ordering disbarment for repeated and continued neglect of client matters, misappropriation and noncooperation); *In re Peters,* 474 N.W.2d 164 (Minn.1991) (disbarring attorney with significant disciplinary history for failure to pay attorney registration fees, client neglect and noncommunication, failure to return client files or to refund unearned retainers, improper communication, and incompetence); *In re Ladd,* 463 N.W.2d 281 (Minn.1990) (disbarring attorney for cumulative weight of misconduct consisting of misappropriation and trust account violations, client neglect and noncommunication, and noncooperation); *In re Simonson,* 420 N.W.2d 903 (Minn.1988) (disbarring attorney for misappropriation, failure to pay employee payroll taxes and failure to keep trust account records); *In re Feldman,* 391 N.W.2d 826 (Minn.1986) (ordering disbarment for 18 counts of misconduct, including client neglect and noncommunication, mis-

representations, noncooperation, practicing without a license, misappropriation, and failure to pay personal debts); *In re Weyhrich,* 339 N.W.2d 274 (Minn.1983) (disbarring attorney for repeated client neglect resulting in significant financial harm, noncooperation, and repeated violations of a probation stipulation over four-year period).

 Based on this court's responsibility to protect the public and Harp's numerous and substantial violations of our professional conduct and disciplinary rules, the harm to his clients caused by those violations, his prior disciplinary history, his failure to comply with the terms of his prior discipline, the lack of any mitigating circumstances, and his failure to cooperate with the Director's Office, we conclude that disbarment is the appropriate discipline.

Therefore, we order that respondent Reynaud L. Harp is disbarred from the practice of law in the State of Minnesota.