## IN RE CHARGES OF UNPROFES-SIONAL CONDUCT IN PAN-EL FILE NO. 41310.

### A17-0160

Supreme Court of Minnesota.

Filed: August 2, 2017

822

William R. Sieben, James S. Ballentine, Schwebel Goetz & Sieben, P.A., Minneapolis, Minnesota; and Charles E. Lundberg, Lundberg Legal Ethics, P.A., Roseville, Minnesota, for appellant.

Susan M. Humiston, Director, Megan Engelhardt, Senior Assistant Director, Office of Lawyers Professional Responsibility, Saint Paul, Minnesota, for respondent.

## OPINION

PER CURIAM.

In this case, appellant, a Minnesota attorney, contests a private admonition issued by a panel of the Lawyers Professional Responsibility Board (Panel) for disclosing confidential communications with a former client, in violation of Minn. R. Prof. Conduct 1.9(c)(2). Appellant contends that he did not disclose confidential communications with a former client and that the decisions of an individual board member of the Lawyers Professional Responsibility Board and the Panel were inadequately explained, in violation of Rule 8(e), Rules on Lawyers Professional Responsibility (RLPR). We conclude that the Panel's finding that appellant disclosed confidential communications with a former client, in violation of Minn. R. Prof. Conduct 1.9(c)(2), was not clearly erroneous and that the appropriate disposition for this misconduct is a private admonition. We further conclude that the decisions of both the individual board member and the Panel were adequately explained. We therefore affirm the private admonition.

## FACTS

Appellant was admitted to the practice of law in Minnesota on October 31, 2008. This attorney-discipline matter arises out of appellant's representation of a client who had been injured in a motor vehicle accident and brought a claim for damages against an insurance company. Appellant's representation was limited to seeking a settlement against the insurance company, and appellant consistently informed his client that he would not pursue litigation. On March 11, 2015, appellant sent a settlement demand to the insurance company requesting $50,000, and in July the insurance company offered to settle the case for $20,000.

On August 13, 2015, appellant and the client discussed the settlement offer. Appellant claims that the client accepted the offer, but the client disputes this claim. On September 4, the client asked appellant to file a lawsuit against the insurance company on his behalf. The following week, appellant told the client that the client had already accepted the $20,000 settlement

and that if he reneged on the settlement agreement, the insurance company would likely file a motion to enforce the settlement. Appellant also reminded the client that he would not pursue litigation. On September 17, the client terminated both appellant's and his firm's representation.

The next day, appellant sent an e-mail to the insurance adjuster, stating as follows:

I was notified my [sic] [client] yesterday that he is terminating my representation and that he is not accepting the settlement offer. He got upset apparently that Medicare is taking a while, as it always does, and now doesn't want the settlement. I advised him that he already accepted it, there is no rescinding his acceptance. He is picking his file up today apparently. I'm going to send a lien for our fees and costs to you. I'm assuming you will be having legal bring a motion to enforce the settlement. He's been advised of all of this. Sorry for the inconvenience but he is a very difficult client. Let me know if you have any questions.

Appellant's client filed an ethics complaint, alleging that appellant forced him to accept the settlement offer and improperly filed an attorney's lien in the case. The matter was referred to a District Ethics Committee (DEC) for investigation, which concluded that appellant did not force the client to accept the settlement agreement or improperly file an attorney's lien. See Rule 6(b), RLPR (providing that a DEC may investigate certain ethics complaints). The DEC concluded, however, that appellant had violated Minn. R. Prof. Conduct 1.6 and 1.9 by disclosing confidential client communications. Based on this conclusion, the DEC recommended that the Director of the Office of Lawyers Pro-

fessional Responsibility (Director) issue a private admonition. See Rule 7(b), RLPR (identifying the different recommendations that a DEC may make to the Director following an investigation of a complaint).

After reviewing the DEC's findings and recommendation, the Director issued a determination that discipline was not warranted. See Rule 8(d), RLPR (identifying the dispositions of a complaint that the Director may make following an investigation). The client appealed, and a member of the Lawyers Professional Responsibility Board reviewed the matter. See Rule 8(e), RLPR (stating that "[i]f the complainant is not satisfied with the Director's disposition[,] ... the complainant may appeal the matter" and that the appeal will be assigned to a board member). The individual board member stated that he had examined the documents related to the complaint and concluded that he concurs "with the DEC's Report and believe[s that appellant] violated Rules 1.6 and 1.9 of the Minnesota Rules of Professional Conduct." The board member directed the Director to issue a private admonition, which occurred on August 25, 2016. See Rule 8(e)(3), RLPR (stating that if a DEC "recommended discipline, but the Director determined that discipline [was] not warranted, the Board member may instruct the Director to issue an admonition").

Appellant requested that a panel review the admonition. See Rule 8(d)(2)(iii), RLPR (authorizing a lawyer who has been admonished to "demand that the Director so present the charges to a Panel which shall consider the matter de novo"). The Panel concluded that appellant's statements in the September 18, 2015 e-mail violated only Minn. R. Prof. Conduct 1.9(c)(2)[1] and

1. Whereas Minn. R. Prof. Conduct 1.9(c)(2) addresses an attorney's duty of confidentiality to a former client, Minn. R. Prof. Conduct 1.6

addresses an attorney's duty of confidentiality to a current client. Similar to Rule 1.9(c)(2), Rule 1.6 prohibits a lawyer from "reveal[ing]

that appellant should be privately admonished for this misconduct. Under Rule 9(m), RLPR, appellant appealed the admonition to our court, arguing that he did not violate Minn. R. Prof. Conduct 1.9(c)(2) and that the individual board member and the Panel had failed to adequately explain their decisions.

## ANALYSIS

■ We will uphold the findings by a Lawyers Professional Responsibility Board panel when those findings have evidentiary support in the record and are not clearly erroneous. *In re Panel File No. 39302*, 884 N.W.2d 661, 665 (Minn. 2016). Interpreting the Minnesota Rules of Professional Conduct and the Rules on Lawyers Professional Responsibility presents a question of law, which we review de novo. *In re Grigsby*, 815 N.W.2d 836, 841 (Minn. 2012); *In re Q.F.C.*, 728 N.W.2d 72, 79 (Minn. 2007).

## I.

The Director argues that appellant violated Minn. R. Prof. Conduct 1.9(c)(2) through the following statement in his e-mail to the insurance adjuster: "I advised [my client] that he already accepted [the settlement offer], there is no rescinding his acceptance." This "I advised" statement, the Director argues, violates the "very core of the attorney-client relationship."

■ As an initial matter, appellant argues that the Director forfeited this argument by not raising it at the earlier stages of the proceeding. We disagree. The Director did not forfeit this theory. At each stage in the proceeding, the "I advised" statement was cited as a violation of the Rules of Professional Conduct. The Panel

decision quoted this statement and concluded that it "constitutes clear and convincing evidence of a violation of Rule 1.9(c)(2)." This statement also was expressly mentioned in the Director's admonition as a reason for discipline. The Director quoted the e-mail in full and concluded: "Based upon these facts[,] . . . [appellant's] statements in his September 18, 2015, e-mail to the insurance adjuster violated Rule 1.9(c)." Finally, the DEC determined that appellant disclosed confidential client information because appellant's e-mail stated that he "advised complainant the offer was 'already accepted' and acceptance could not be rescinded." The theory that appellant violated the Rules of Professional Conduct by making the "I advised" statement is not being raised for the first time before us.

■ Having concluded that this argument is properly before us, we next turn to whether this statement violates Rule 1.9(c)(2). A lawyer who has formerly represented a client in a matter is prohibited from "reveal[ing] information relating to the representation except as these rules would permit or require with respect to a client."[2] Minn. R. Prof. Conduct 1.9(c)(2). Because appellant's client terminated the representation the day before appellant's e-mail, appellant's conduct is governed by Rule 1.9.

Appellant concedes that his statement in the e-mail—that he had advised his client that the settlement offer had been accepted by the client and that "there is no rescinding his acceptance"—disclosed "information relating to the representation." He also does not dispute that it reveals details of appellant's confidential discussions with his client. Nevertheless, appel-

information relating to the representation of a client" unless authorized to do so under paragraph (b) of the rule. Minn. R. Prof. Conduct 1.6(a).

2. Appellant does not contend that his "I advised" statement to the insurance adjustor was authorized by any other rule of professional conduct.

lant contends that this disclosure does not violate Rule 1.9(c)(2) because it was not "that much of a revelation" and would not have "any conceivable effect on the client's claim." But nothing in the language of the rule limits the prohibition to significant revelations or contains a requirement that the improper disclosure prejudices a client. *See* Minn. R. Prof. Conduct 1.9(c)(2). As we have determined, the rules protecting client confidences oblige a lawyer to "maintain *all* client confidences, significant or insignificant." *Lennartson v. Anoka-Hennepin Indep. Sch. Dist. No. 11*, 662 N.W.2d 125, 131 (Minn. 2003) (emphasis added). Accordingly, we conclude that the Panel did not clearly err by finding that appellant's e-mail violated Minn. R. Prof. Conduct 1.9(c)(2).

## II.

■ Next, we turn to the appropriate discipline for appellant's violation of Rule 1.9(c)(2). We have the final responsibility to determine the appropriate discipline for an attorney who violates the Rules of Professional Conduct.[3] *In re Panel File 98-26*, 597 N.W.2d 563, 568 (Minn. 1999). The primary purpose of attorney discipline is " 'not to punish the attorney but rather to protect the public, to protect the judicial system, and to deter future misconduct by the disciplined attorney as well as by other attorneys.' " *In re Schulte*, 869 N.W.2d 674, 677 (Minn. 2015) (quoting *In re Rebeau*, 787 N.W.2d 168, 173 (Minn. 2010)). In determining the appropriate discipline, we consider " '(1) the nature of the misconduct; (2) the cumulative weight of the disciplinary violations; (3) the harm to the

public; and (4) the harm to the legal profession.' " *Id.* (quoting *In re Nelson*, 733 N.W.2d 458, 463 (Minn. 2007)).

■ Although maintaining the confidentiality of attorney-client communications is fundamental to the attorney-client relationship, *see Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981) (recognizing that protecting client confidences promotes the "full and frank communication between attorneys and their clients and thereby promote[s] broader public interests in the observance of law and administration of justice"), the nature of the misconduct in this case was isolated and nonserious. Appellant stated that he had advised his client that the settlement offer was already accepted and that once accepted, the client could not rescind his acceptance. The insurance adjuster already knew that the client had accepted the offer, so the only information disclosed was that appellant made these statements to the client. The cumulative weight of the misconduct is also minimal because it involved a single e-mail. Likewise, there was minimal, if any, harm to the client in this case. Because the only new information disclosed was that appellant had discussed these issues with the client, the insurance adjuster was not able to use the disclosure to the client's disadvantage.

Nevertheless, this type of disclosure harms the legal profession because it undercuts the public's trust in attorneys. *See Nat'l Texture Corp. v. Hymes*, 282 N.W.2d 890, 896 (Minn. 1979) ("The purpose of the [attorney-client] privilege is to encourage

---

**3.** Appellant argues that the Director is vested with the discretion to decline to impose discipline even when there is a technical violation of the Minnesota Rules of Professional Conduct. Given this authority, appellant concludes that we should defer to the Director's initial determination that no discipline was

warranted. But we have the ultimate responsibility for imposing discipline, and we are not required to give deference to the Director's determination of the appropriate discipline. *See In re Panel File 98-26,* 597 N.W.2d 563, 568 (Minn. 1999).

the client to confide openly and fully in his attorney without fear that the communications will be divulged . . . ."). Considering all of these factors, we conclude that the appropriate discipline is a private admonition.

## III.

◼ Appellant further contends that the individual board member reviewing the Director's determination violated Rule 8(e), RLPR, by inadequately explaining the reasons for a private admonition. The Director argues that the board member complied with Rule 8(e), RLPR, because he stated that he "concur[ed] with the DEC's Report and believe[d that appellant] violated Rules 1.6 and 1.9."

Rule 8(e), RLPR, requires that "[t]he reviewing Board member shall set forth an explanation of the Board member's action." When interpreting this rule, we have held that "an explanation is '[s]omething that explains,' and to explain is 'to offer reasons for or a cause of; justify.' " *Q.F.C.*, 728 N.W.2d at 80 (quoting *The American Heritage Dictionary of the English Language* 645 (3d ed. 1992)). In *Q.F.C.*, we addressed whether an individual board member violated Rule 8(e) when she said that, based on her "review of [Q.F.C.'s file], [she] direct[ed] that this matter be submitted to a Lawyer's Board Panel to determine whether public discipline is warranted." *Id.* at 79. We concluded that this sentence did not provide an explanation of the reasons for the board member's actions, and therefore the board member violated Rule 8(e). *Id.* at 80. But we did not address "how thorough an explanation must be . . . or . . . what constitutes a sufficient explanation under Rule 8(e), RLPR." *Id.* at 80 n.2.

Here, the board member's explanation was sufficient to comply with Rule 8(e), RLPR. The board member stated, "I con-cur with the DEC's Report and believe [that appellant] violated Rules 1.6 and 1.9 of the Minnesota Rules of Professional Conduct." In turn, the DEC report described over the course of four paragraphs the reasons why the DEC thought appellant had violated Minn. R. Prof. Conduct 1.6 and 1.9. By concurring with the DEC's report, the board member indicated that he believed that appellant committed misconduct for the same reasons as the DEC. This explanation is distinguishable from the one provided by the board member in *Q.F.C.*, who simply stated that the matter should be submitted to a panel for review. *See* 728 N.W.2d at 80. Unlike in *Q.F.C.*, the board member's statement sufficiently sets forth an explanation for his actions, as required by Rule 8(e), RLPR. Appellant therefore is not entitled to relief on this ground.

## IV.

◼ Finally, appellant contends that the Panel failed to adequately explain the reasons underlying its conclusion that he violated Minn. R. Prof. Conduct 1.9. Although Rule 8(e), RLPR, requires the individual board member to set forth an explanation for his or her decision, Rule 9, RLPR, which governs panel proceedings, has no such requirement. Instead, Rule 9(j)(1)(iii), RLPR, states that if the panel "concludes that the attorney engaged in conduct that was unprofessional but of an isolated and nonserious nature, the Panel shall state the facts and conclusions constituting unprofessional conduct and issue an admonition." In this case, the Panel provided the facts of the situation, quoted extensively from appellant's e-mail, and explicitly concluded that he violated Minn. R. Prof. Conduct 1.9(c)(2). The Panel was under no obligation to provide further explanation.

## CONCLUSION

For the foregoing reasons, we affirm the private admonition.

Private admonition affirmed.