PER CURIAM.
This case involves Minn. R. Prof. Conduct 3.4(c), which prohibits "knowingly disobey[ing] an obligation under the rules of a tribunal." The Director of the Office of Lawyers Professional Responsibility (Director) issued an attorney (Attorney) an admonition for failing to file a summary judgment motion response by the deadlines set forth in Minn. Gen. R. Prac. 115.03(b). Following an evidentiary hearing, a panel of the Lawyers Professional Responsibility Board (panel) affirmed the admonition, concluding that Attorney's conduct violated Minn. R. Prof. Conduct 3.4(c). Attorney appealed to our court. Because the panel's decision was clearly erroneous, we reverse the panel's decision and vacate the admonition.
FACTS
Complainant, C.G., runs a real estate rental business catering to college students in Duluth. He also operates a business that buys and sells liens and judgments at a discount and then satisfies those liens and judgments.
In 2013, C.G. entered into a contract for deed to purchase real estate from R.F. In early 2015, R.F. (who was represented by a lawyer) attempted to cancel the contract. C.G., who was not represented at the time, brought a motion on April 28, 2015, seeking various remedies, including a temporary restraining order, to prevent R.F. from cancelling the contract for deed. The district court dismissed the motion without prejudice.
R.F. moved ahead with the cancellation process. On July 29, 2015, C.G., still self-represented, filed another motion seeking to restrain R.F. from cancelling the contract. R.F. responded on July 31, 2015 with a motion to dismiss and for summary judgment. The notice stated that the motion would be heard on August 5, 2015.
On August 4, 2015, C.G. and Attorney entered into a written Attorney Fee Agreement (Fee Agreement). The Fee Agreement provided that Attorney would represent C.G. in the real estate contract matter against R.F. The Fee Agreement required C.G. to pay a retainer of $8,500 for the representation: $1,000 at the execution of the agreement and another $7,500 within 10 days (by August 14, 2015). It also stated that "IT IS EXPRESSLY UNDERSTOOD that unless [payment of] the required fees and expenses are made when due, Attorney may refuse to proceed further with the legal services until such payments are made." The Fee Agreement further provided that C.G. "agrees to promptly respond to any requests for information or other inquiries" by Attorney.
*269 Attorney succeeded in postponing the August 5 hearing to October 26, 2015. C.G. paid the first $1,000 by August 10, 2015. He did not, however, make the final $7,500 retainer payment by August 14, as required by the Fee Agreement.
On August 15, 2015, Attorney sent an e-mail to C.G., which read:
Checking in on a couple of things.
1. Are you willing and able to pay R.F. the amount owed to pay off the contract for deed in full to settle your case? In speaking with his attorney, it sounds likely he would accept that.
2. Your second payment toward your retainer was due Friday. I did not see that you paid that. Please be certain to bring that in Monday. We cannot continue our representation of you if that is not paid.
On September 21, 2015, Attorney and C.G. exchanged several messages. Attorney left C.G. a voicemail message and sent a follow-up e-mail, which read: "Just left you a message. Give me a call when you have the chance. Note that we have a deadline coming up to file some things in your case. We will need some time to prepare them. We cannot proceed unless we get the remainder of your retainer." Less than an hour later, C.G. replied, "I thought we were going to reach a settlement agreement. If the case can settle I would rather spend my money on a settlement agreement." Attorney followed up 13 minutes later with the following e-mail: "We still have to follow the court deadlines. If it's not settled by the filing date we need to file the documents. We can make the settlement offer but we're better off if you actually have the money [to pay the settlement] in hand." C.G. simply replied: "Make the settlement offer please."
At the evidentiary hearing before the panel, C.G. explained what he thought had been decided in the September 21 e-mail exchange. He testified that, "It was my understanding we weren't going to spend any money on any litigation and that [Attorney] was going to present a settlement offer at this point. If we didn't have to spend any money, we weren't going to spend it."
On September 23, 2015, Attorney attempted to contact C.G. by phone and sent him an e-mail asking for clarity about the settlement offer: "How much will you pay? When will you pay it? What exactly do you want in return?" C.G. did not reply. Attorney again attempted to contact C.G. by phone and sent an e-mail the following day, explaining: "I need to have a discussion with you prior to making the settlement offer." Again, C.G. did not respond.
On October 9, 2015, Attorney attempted to contact C.G. by phone once again and sent a follow-up e-mail: "I just left you another voicemail. I never heard from you on this. Also, note that we did not receive your third retainer payment. We're going to go ahead and close your file. Please contact me immediately if you would like to discuss."
C.G. responded later that day, stating: "We already had a discussion on the settlement offer and I provided you with the documents." The record indicates, however, that C.G. had not provided a definitive settlement offer amount, and he acknowledged that the documents he provided left an open question on the amount he would have to pay in settlement to cover the outstanding taxes owed on the property.
At the evidentiary hearing before the panel, C.G. explained that on October 9, his position on the course of the dispute was the same as it had been in September:
It was my understanding we were trying to reach a settlement agreement. We weren't going to spend any money until we made the settlement offer. We wanted *270 to see where that was going to go. It was my understanding that [Attorney] was in agreement with that. I know he kept talking about the retainer. Every time we brought up about the settlement and we didn't want to spend money on litigation, he always consented to that agreement.
On October 12, 2015, the following e-mails were exchanged by Attorney and C.G.:
[ATTORNEY:] As I told you before, I need to get some clarification on exactly what you want to offer. I need to tell him the exact figure you offer and the date you will pay it. Please provide this to me.
Also, I never received the last retainer payment from you. At this point I am willing to continue to represent you in negotiations only, but will not file anything or appear in court. Please confirm you agree to this.
....
[C.G.:] $36,000 on October 30, 2015.
....
[ATTORNEY:] I will convey this to R.F.'s attorney.
Also I will assume you understand and agree that I will not be filing anything in court or appearing because you have not paid the final installment on the retainer. Let me know today if that is not your understanding.
....
[C.G.:] I understand.
At the evidentiary hearing, C.G. testified that when he replied "I understand," he meant that he understood "[t]hat [Attorney] wasn't going to file anything or do anything. He was just going to pursue the settlement agreement, which is what I wanted." Attorney similarly concluded from the October 12 e-mail exchange that "I had no reason to think that [C.G.] believed that we would do anything other than continue negotiations. And he had no reason to think we would file anything."
After finally receiving the settlement offer details on October 12, Attorney passed on C.G.'s offer to R.F. R.F. rejected the settlement offer shortly thereafter.
The hearing on the postponed motions-C.G.'s July 29 motion for injunctive relief and R.F.'s motion for summary judgment-remained scheduled for October 26. Under Minn. Gen. R. Prac. 115.03(b), C.G.'s response to the summary judgment motion was due by October 17.[1]
In the days following the rejection of the settlement offer, C.G. authorized Attorney to respond to the summary judgment motion and paid an additional retainer in the total amount of $4,000. Specifically, on October 16, the day before the response was due, C.G. paid Attorney's firm $1,800. On October 22, after the response was due, C.G. paid $2,200. Attorney's firm filed a response memorandum on October 23-6 days after the Rule 115.03 deadline and 3 days before the hearing. The court clerk accepted the filing.
The October 26 hearing took place as scheduled. The district court denied C.G.'s motion for an injunction blocking the termination of the contract for deed but also struck R.F.'s motion for summary judgment without prejudice after opposing counsel verbally withdrew the motion at the hearing. The court described C.G.'s response as "untimely" but made no other comment on the filing. Attorney's representation of C.G. terminated in November 2015.
*271 C.G. filed a complaint with the Office of Lawyers Professional Responsibility.[2] Following an investigation,[3] the Director determined that Attorney violated Minn. R. Prof. Conduct 3.4(c) and 8.4(d) when he failed to file the summary judgment response on October 17. She issued an admonition.
Attorney requested that the Director present the charges to a panel of the Lawyers Professional Responsibility Board to consider de novo. See Rule 8(d)(2)(iii), Rules on Lawyers Professional Responsibility (RLPR). After holding an evidentiary hearing, the panel affirmed the admonition. It concluded that Attorney violated Minn. R. Prof. Conduct 3.4(c) because he "did not serve or file anything on behalf of" C.G. in response to the motion for summary judgment "by the October 17, 2015, deadline." The panel also ruled that Attorney did not violate Minn. R. Prof. Conduct 8.4(d).[4] Attorney appealed. See Rule 9(m), RLPR.
ANALYSIS
The Director bears the burden of proving professional misconduct by clear and convincing evidence. In re Stoneburner , 882 N.W.2d 200, 203 (Minn. 2016). Clear and convincing proof, of course, is a higher standard than preponderance of the evidence. Id. Our review is guided by the higher standard of proof the Director bears in disciplinary proceedings. See State v. Leake , 699 N.W.2d 312, 319 (Minn. 2005) (stating that a reviewing court considers the sufficiency of the evidence in light of the burden of proof in the proceeding below).
Because a transcript was ordered in this case, the findings and conclusions of the panel are not conclusive. In re Murrin , 821 N.W.2d 195, 206 (Minn. 2012). We uphold a panel's findings "when those findings have evidentiary support in the record and are not clearly erroneous." In re Panel File No. 41310 , 899 N.W.2d 821, 825 (Minn. 2017). However, "[i]nterpreting the Minnesota Rules of Professional Conduct ... presents a question of law, which we review de novo." Id. Further, we "retain ultimate responsibility for determining the appropriate sanction" for attorney misconduct. In re Nathanson , 812 N.W.2d 70, 78 (Minn. 2012).
The panel determined that Attorney violated Minn. R. Prof. Conduct 3.4(c), which provides that "[a] lawyer shall not ... knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists." The panel concluded that Attorney "knowingly disobeyed an obligation" under Minn. Gen. R. Prac. 115.03 when he failed to respond to R.F.'s motion for summary judgment by October 17, or 9 days before the October 26 hearing.[5]
*272 The word "knowingly" "denotes actual knowledge of the fact in question." Minn. R. Prof. Conduct 1.0(g). Accordingly, to establish a violation of Minn. R. Prof. Conduct 3.4(c), the Director must prove Attorney's "actual knowledge" that he "disobeyed an obligation" under Minn. Gen. R. Prac. 115.03 when he failed to file the summary judgment response for C.G. on October 17. And because a person cannot "knowingly disobey an obligation" unless the person knows that he has the obligation in the first place, the Director must prove that Attorney had "actual knowledge" of his "obligation" to file the summary judgment response by October 17.
We have addressed what proof is required to establish "knowing" violations of a legal duty. We have held that "when knowledge of the law is an element of the offense, mistake of law is a defense because it negates the existence of the required mental state." State v. Mikulak , 903 N.W.2d 600, 603 (Minn. 2017) ; see also State v. Watkins , 840 N.W.2d 21, 30 (Minn. 2013). In other words, even if an individual knew a law existed, there is no "knowing" violation unless the individual knew the law applied to him under the circumstances.
Therefore, Rule 3.4 required the Director to establish by clear and convincing evidence that, considering all the circumstances, Attorney knew that he was disobeying Rule 115.03 when he did not file the summary judgment response before October 17.
Using that legal test, we hold that the panel clearly erred by concluding that Attorney knowingly disobeyed an obligation under Rule 115.03. The evidence in the record simply does not support that conclusion. The October 12 e-mails describe an understanding that Attorney "will not be filing anything in court or appearing" on C.G.'s behalf. Moreover, C.G. and Attorney each testified to an understanding that Attorney would not prepare or file any papers on behalf of C.G. ("the party" of Rule 115.03 ). This understanding followed several weeks of communication between the parties in which Attorney advised C.G. about the approaching filing deadline and C.G.'s failure to pay the retainer required under the Fee Agreement.[6]
More critically, the parties' understanding that Attorney would not file a response memorandum was consistent with C.G.'s express directives to Attorney that he not take action that incurred "litigation costs" beyond his efforts to reach a settlement with R.F. C.G. repeatedly instructed Attorney to focus on settlement and reminded *273 Attorney that C.G. did not want to spend any money on any litigation: "If we didn't have to spend any money, we weren't going to spend it." Until settlement efforts were exhausted and C.G. decided to further argue in court-something that did not occur until it was too late to comply with the due date for filing the summary judgment response-Attorney had no authority from C.G. to prepare or file a brief on C.G.'s behalf. See Minn. R. Prof. Conduct 1.2(a) ("[A] lawyer shall abide by a client's decisions concerning the objectives of representation ...."). Thus, the record establishes that Attorney understood that he did not have an obligation to file a summary judgment response on October 17 and therefore did not knowingly disobey the district court's October 17 deadline.
The panel applied a different legal standard in reaching its decision that Attorney violated Rule 3.4. The panel reasoned that it could ignore the circumstances surrounding Attorney's failure to file a summary judgment response before October 17. By doing so, the panel impermissibly read the word "knowingly" out of Rule 3.4 and instead imposed a negligence or strict liability standard.
The panel also relied on, and the Director points to, Minn. R. Prof. Conduct 1.2(c) to avoid the conclusion we reach in this case. Rule 1.2(c) allows a lawyer to limit representation of a client "if the limitation is reasonable under the circumstances and the client gives informed consent." The Director argues that the arrangement under which Attorney would pursue settlement but not file the summary judgment response on October 17 was not reasonable and that C.G. lacked information about the consequences of failing to timely file his response sufficient to provide "informed consent." Consequently, the Director argues that because Attorney did not properly limit his representation of C.G. to settlement negotiations, Attorney's obligation to file the summary judgment response remained.
We reject this argument for two reasons. First, "to comport with due process, lawyers facing discipline must be given notice of the charges against them." In re Taplin , 837 N.W.2d 306, 311 (Minn. 2013). " '[T]he charges to which an attorney must answer need to be sufficiently clear and specific and the attorney must be afforded an opportunity to anticipate, prepare and present a defense.' " In re Garcia , 792 N.W.2d 434, 441 (Minn. 2010) (quoting In re Gherity , 673 N.W.2d 474, 478 (Minn. 2004) ). Here, the Director did not seek to discipline Attorney for a violation of Rule 1.2(c) and provided no notice to Attorney that he violated Rule 1.2(c).
Second, even if Attorney did not properly limit his representation of C.G., that does not negate the undisputed fact that Attorney (and C.G. for that matter) understood on October 17 that the representation had been limited and that, as a result of that limitation, Attorney had no authorization or obligation to file a summary judgment response for C.G. The Director cannot rely on an inartful limitation of representation to establish that Attorney knew he had an obligation under Minn. Gen. R. Prac. 115.03 to file a responsive brief or that he "knowingly disobeyed" that obligation.
Attorney cannot be held to "knowingly disobey an obligation" under a court rule when the record establishes that he had no knowledge that the obligation applied to him in the circumstances that existed between C.G. and Attorney in October 2015. The panel's finding that Attorney acted knowingly is therefore clearly erroneous.
*274 CONCLUSION
For the foregoing reasons, we reverse the panel's finding that Attorney violated Minn. R. Prof. Conduct 3.4(c) and vacate the admonition.
Reversed and admonition vacated.

A party responding to a dispositive motion must serve and file the documents "at least 9 days prior to the hearing." Minn. Gen. R. Prac. 115.03(b). Nine days before October 26, 2015 was October 17, 2015.

The majority of C.G.'s complaint involved a distinct matter in which Attorney's firm represented C.G. The Director did not impose any discipline on Attorney for this other matter.

The Director initially referred the complaint to the local district panel but later recalled it to handle herself.

Minnesota Rule of Professional Conduct 8.4(d) provides that "[i]t is professional misconduct for a lawyer to ... engage in conduct that is prejudicial to the administration of justice."

Minnesota General Rule of Practice 115.03(b) provides: "The party responding to the motion shall ... serve the following documents on all opposing counsel ... and file the documents with the court administrator at least 9 days prior to the hearing: (1) Memorandum of law; and (2) Supplementary affidavits and exhibits." Rule 115.01, in describing the scope and application of Rule 115, explains that the "time limits in this rule are to provide the court adequate opportunity to prepare for and promptly rule on matters, and the court may modify the time limits." Minn. Gen. R. Prac. 115.01(b). A district court has the discretion to waive or modify that time limit "if the interests of justice [ ] require." Minn. Gen. R. Prac. 115.07. Further, a district court has discretion to hear motions notwithstanding that the filing deadline has been ignored and may impose alternative sanctions for rule violations. Minn. Gen. R. Prac. 115.06 ; id. advisory comm. cmt.-1997. The district court exercised its discretion under these provisions to hear the motion notwithstanding the late filing and, as the panel and Director acknowledge, C.G. suffered no prejudice as a result of the late filing.

The Director argues that Attorney should have more clearly communicated the specific filing deadline and the consequences of failing to file a summary judgment response. Even accepting the Director's conclusion that Attorney did not advise C.G. on those matters, the Director did not assert, and the panel did not find, that Attorney violated Minn. R. Prof. Conduct 1.4(a)(3) (requiring an attorney to "keep the client reasonably informed about the status of the matter"). Consequently, those purported failures of communication cannot support an admonition or any level of discipline in this matter. See In re Taplin , 837 N.W.2d 306, 311 (Minn. 2013) ("In order to comport with due process, lawyers facing discipline must be given notice of the charges against them.").