PER CURIAM.
In this discipline case, an attorney challenges the findings made by a panel of the Lawyers Professional Responsibility Board and the discipline imposed. We conclude that the panel's findings are supported by the evidence and are not clearly erroneous, and that the appropriate discipline is a private admonition.
FACTS
In 2010, W.Y. purchased 14.63 acres of land from J.Y. W.Y.'s mortgage company refused to give him a mortgage unless the property was split into two pieces: Parcel A, which contained the homestead residence, and Parcel B, which contained several buildings used for farm operations. At the closing J.Y. refused to give W.Y. a warranty deed for Parcel B.
In April 2011, appellant attorney (Attorney) was retained to represent W.Y. in an action to obtain title to Parcel B. The dispute between W.Y. and J.Y. was resolved via mediation in August 2012. Afterward, J.Y. signed a warranty deed conveying Parcel B to W.Y., which was notarized by the mediator. The mediator mailed the deed and the abstract of title to Attorney several weeks later.
Attorney subsequently presented W.Y. with a bill for attorney fees and costs in the amount of $327,940.88. By early 2013, W.Y. had paid only approximately $2,800, missing several scheduled payments. On February 8, 2013, W.Y. wrote to Attorney and requested that he return the Parcel B deed and abstract. W.Y. gave Attorney one week to do so.
On February 11, 2013, Attorney sent a letter to W.Y. ending his representation in the Parcel B matter due to nonpayment of fees. On February 12, Attorney sent another letter to W.Y. stating that, pursuant to Minn. Stat. § 481.13 (2018), Attorney had filed an attorney's lien against Parcel A, Parcel B, and several items of W.Y.'s personal property-including the Parcel B deed and abstract. On February 13, Attorney *313 sent a third letter to W.Y. in which he (1) affirmed receipt of W.Y.'s letter requesting the Parcel B deed and abstract; (2) restated that he had filed an attorney's lien against W.Y. for unpaid invoices; and (3) declined to return the warranty deed and abstract of title to W.Y. until either the amount owed was paid or the court issued an order regarding these documents.
On April 23, 2013, pursuant to the attorney-lien statute, Minn. Stat. § 481.13, subd. 1(c), the district court held a hearing on Attorney's motion to establish and determine the amount of his attorney's lien. The district court issued an order establishing an attorney's lien on July 17, 2013. The district court concluded, however, that Attorney could not assert an attorney lien on the warranty deed and the abstract, citing both the abstract-transfer statute, Minn. Stat. § 386.375, subd. 1(b)-(c) (2018), and Minn. R. Prof. Conduct 1.16(g). The district court therefore ordered Attorney to return the deed and abstract to W.Y. within 7 days of the judgment being entered.
Attorney did not return the deed and abstract. By order upon stipulation, Attorney deposited the deed and abstract with the district court as security for a stay of enforcement of the judgment. Attorney then appealed.
The court of appeals, in an unpublished decision, affirmed in part and reversed in part. Specifically, the court affirmed the district court's determination that Attorney could not assert a lien on the deed and abstract. Thereafter, the district court ordered that the deposited documents be immediately released to W.Y. They were. W.Y. promptly recorded them with the county.
In June 2016, counsel who represented W.Y. in his efforts to take possession of the deed and abstract filed a complaint with the Office of Lawyers Professional Responsibility asserting that Attorney had violated the Minnesota Rules of Professional Conduct by failing to promptly return the documents. After an investigation, the Director determined that Attorney had violated Minn. R. Prof. Conduct 1.15(a)(1) as interpreted by Appendix 1; 1.15(c)(3)-(4); 1.15(h); 1.16(d); and 1.16(g), and issued a private admonition on September 1, 2017. See Rule 8(d)(2), Rules on Lawyers Professional Responsibility (RLPR). The Director issued an amended admonition on August 16, 2018.
Attorney appealed the amended admonition to a panel of the Lawyers Professional Responsibility Board. See Rule 8(d)(2)(iii), RLPR. The panel held an evidentiary hearing and heard testimony from Attorney and the complainant. See Rule 8(d)(4)(ii), RLPR. Reviewing the matter de novo, the panel unanimously affirmed the admonition. See Rules 8(d)(2)(iii), 9(j)(2), RLPR. Attorney appealed the admonition to us. See Rule 9(m), RLPR.
ANALYSIS
In lawyer discipline matters, we uphold a panel's findings "when those findings have evidentiary support in the record and are not clearly erroneous." In re Panel File No. 41310 , 899 N.W.2d 821, 825 (Minn. 2017). But "[i]nterpreting the Minnesota Rules of Professional Conduct ... presents a question of law, which we review de novo." Id.
I.
Attorneys are required to "promptly ... deliver to the client ... properties in the possession of the lawyer which the client ... is entitled to receive." Minn. R. Prof. Conduct 1.15(c)(4). After termination of representation, attorneys must "take steps to the extent reasonably practicable to *314 protect a client's interests, such as ... surrendering papers and property to which the client is entitled ...." Minn. R. Prof. Conduct 1.16(d). Attorneys are prohibited from "condition[ing] the return of client papers and property on payment of the lawyer's fee ...." Minn. R. Prof. Conduct 1.16(g).[1]
After mediation between W.Y. and J.Y. in August 2012, J.Y. executed the warranty deed and gave it to the mediator. The mediator then mailed the deed and the abstract of title to Attorney, who did not convey the documents to his client.
Attorney argues that, although he did not convey the deed and abstract, he did not violate Rules 1.15(c)(4) and 1.16(d) because W.Y. was not entitled to the documents.[2] This, he argues, is because he (through his law firm) owned a property right in the documents through an attorney's lien. Based on the lien, Attorney argues that W.Y. did not have clear title to the documents and, therefore, was not entitled to them. This argument misapprehends both the attorney-lien statute and the duty of attorneys to obey the Rules of Professional Conduct.
A.
At common law, two types of attorney's liens existed: the retaining lien and the charging lien. Village of New Brighton v. Jamison , 278 N.W.2d 321, 324 (Minn. 1979). The former allowed an attorney "to hold or retain a client's money or property," while the latter allowed an attorney "to encumber money payable to the client." Attorney's Lien , Black's Law Dictionary (8th ed. 2004); see also Jamison , 278 N.W.2d at 324.
More than a century ago, the Legislature preempted the common law and enacted an attorney-lien statute. See Minn. Rev. Laws § 2288 (1905); Jamison , 278 N.W.2d at 324. Although the statute initially permitted both forms, in 1976 the Legislature "abolished the attorneys retaining lien in Minnesota." Jamison , 278 N.W.2d at 324 ; see Act of Apr. 13, 1976, ch. 304, § 2, 1976 Minn. Laws 1139, 1140-41 (entitled "[a]n act ... abolishing lien of an attorney upon money and papers of his client in his possession").
The current version of the attorney-lien statute allows for two types of charging liens: (1) a cause-of-action lien and (2) a property-interest lien. Minn. Stat. § 481.13, subd. 1(a). It does not allow for a retaining lien. Here, Attorney sought to assert an unlawful retaining lien. Nothing in Minn. Stat. § 481.13, or in Rules 1.15(c)(4) and 1.16(d), required or allowed him to withhold the documents from his client. And Rule 1.16(g) expressly forbids it.[3]
*315 B.
Attorney also argues that the amended admonition violates his due-process rights because, he insists, the retaining lien exists in Minnesota, and the panel's affirmation of the admonition effectively changed the law. This argument lacks merit. We explicitly acknowledged the abolition of the retaining lien in Jamison , yet Attorney cites that case in support of his argument that the retaining lien exists.[4] He also cites, without explanation, Westerlund v. Peterson , 157 Minn. 379, 197 N.W. 110, 111-12 (1923), which we decided 53 years before the Legislature abolished the retaining lien and 56 years before we decided Jamison .
On a constitutional claim such as this one, statutes and our rules are presumed to be constitutional and to demonstrate otherwise is a very heavy burden. See Heidbreder v. Carton , 645 N.W.2d 355, 372 (Minn. 2002). Attorney's argument does not meet this high standard.
II.
We turn now to the other basis for discipline brought by the Director: trust-account violations. The Director's petition detailed two instances of trust-account accounting errors. First, Attorney paid a $525 filing fee in the W.Y. matter from the W.Y. client subsidiary ledger of his trust account when the ledger carried only a $500 balance. This payment created a $25 negative balance in the W.Y. subsidiary ledger, although not in the aggregate trust-account balance. Second, Attorney mistakenly credited a $750 deposit from client K.S. and a withdrawal payment of that $750 invoice to W.Y.'s subsidiary ledger. The Director's petition also noted that, from April 2011 to May 2013, Attorney carried a balance of between $340.65 and $790.65 of his own funds within the trust account.
Attorney admitted to the trust-account violations during the hearing. Nevertheless, Attorney argues that these are minor clerical errors and mistakes that do not rise to the level of rule violations.[5] Attorney also argues that in the absence of rules or guidance from the Director for discovering trust-account errors such as those included in his admonition, it violates due process to impose discipline based on rules that, Attorney asserts, nobody except the Director is aware. Finally, Attorney argues that the trust-account portion of the amended admonition violates the equal protection clauses of both the United States Constitution and the Minnesota Constitution because he was punished for minor clerical errors in his trust account, yet the Complainant, Attorney contends, lied to the court and defrauded Attorney's law firm.
Attorney's arguments are without merit. No language, explicit or implicit, in Rule 1.15(a)(1), (c)(3), or (h), as interpreted by Appendix 1, requires intent to violate the rule. To the contrary, we have specifically concluded that "misuse of the [trust] account, whether negligent or intentional, violates the rule." In re Varriano , 755 N.W.2d 282, 289 (Minn. 2008) ; see also In re Porter , 449 N.W.2d 713, 718 (Minn. 1990) ("[An] attorney has a responsibility to maintain her or his trust account which *316 goes beyond a requirement to refrain from intentional wrongdoing."). Similarly, no due process violation occurred because "[e]very lawyer is ... charged with the knowledge that [the lawyer] must maintain a separate [trust] account and accurate records. " In re Shaw , 298 N.W.2d 133, 135 (Minn. 1980) (emphasis added).
III.
Finally, we turn to the appropriate discipline for Attorney's violation of the Rules. Under Rule 8(d)(2), RLPR, "if the Director concludes that a lawyer's conduct was unprofessional but of an isolated and non-serious nature, the Director may issue an admonition." The panel unanimously affirmed the Director's private admonition. "We give great weight to the recommendations of the Panel," but we have the final responsibility for determining the appropriate discipline. In re Panel File No. 39302 , 884 N.W.2d 661, 669 (Minn. 2016). We may affirm the admonition or "make such other disposition as [we] deem[ ] appropriate." Rule 9(m), RLPR.
In determining the appropriate discipline, "[w]e are guided by the principle that the purpose of attorney discipline 'is not to punish the attorney, but rather to protect the public, to protect the judicial system, and to deter future misconduct by the disciplined attorney as well as by other attorneys.' " In re Panel File No. 41755 , 912 N.W.2d 224, 232 (Minn. 2018) (quoting In re Fairbairn , 802 N.W.2d 734, 742 (Minn. 2011) ). To determine the appropriate discipline to impose, we consider four factors: "(1) the nature of the misconduct, (2) the cumulative weight of the disciplinary violations, (3) the harm to the public, and (4) the harm to the legal profession." In re Panel File No. 99-5 , 607 N.W.2d 429, 431 (Minn. 2000).
The nature of the misconduct here is "non-serious." Rule 8(d)(2), RLPR. Although Attorney impermissibly retained the documents for nearly 2 years, he did seek to vindicate his mistaken view of the law and deposited the documents with the district court for safekeeping. The misconduct is also "isolated" because it was a one-time violation, and Attorney has no record of discipline. See, e.g. , Panel File No. 41310 , 899 N.W.2d at 826. Additionally, although trust-account violations bear close scrutiny, the mistakes here did not involve misappropriation of client funds. Because the violations did not create a shortage in Attorney's overall trust account and because he promptly corrected the error, the violations are non-serious.
This case involved limited harm to the public. Attorney's client was deprived of the abstract and deed, but this deprivation did not divest the client of actual ownership of the property. As for the public at large, there does not appear to be any significant harm. Even so, the absence of harm to others "does not reduce a violation of a rule, however technical, into no violation and thus no discipline at all." In re MDK , 534 N.W.2d 271, 272 (Minn. 1995).
Finally, there was some harm to the profession, but, by a narrow margin, the harm was not great enough to warrant public discipline. In the briefs he submitted and during his testimony before the panel, Attorney came very close to inappropriately accusing the Director and the courts of malicious intent. Unsubstantiated claims of bias, particularly from a member of the bar, serve only to bring the profession into disrepute. Although this behavior is cause for concern, it was not so immoderate as to warrant public discipline.
Thus, we hold that a private admonition was the appropriate discipline in this case.
*317 CONCLUSION
For the foregoing reasons, we affirm the panel's findings and the discipline imposed.
Private admonition affirmed.

In addition to facing discipline for violation of these rules, attorneys who "refuse to deliver money or papers to a person ... for whom the attorney has received them in the course of professional employment" may be "punished for contempt." Minn. Stat. § 481.14 (2018).

Attorney focuses his argument on Rules 1.15(c)(4) and 1.16(d). He makes passing reference to 1.16(g) only to read in the requirement that "it is implicit that the client must be 'entitled' to the 'papers and property.' " Attorney also makes a cursory statement that "if Rule 1.16(g) is mandatory independent of the property rights of the attorney in the 'papers and property' in issue, then [it] would be unconstitutional as being a Taking without Just Compensation." This statement is not supported by any persuasive constitutional analysis.

Even if there was a conflict between Rules 1.15(c)(4), 1.16(d), and 1.16(g) on the one hand, and Minn. Stat. § 481.13, on the other, Attorney would not have been excused from complying with the Rules. Attorney discipline is entirely the province of the judiciary. Sharood v. Hatfield , 296 Minn. 416, 210 N.W.2d 275, 279-80 (1973).

One could argue that a remnant of the retaining lien remains in Minn. Stat. § 481.14 (2018), which allows an attorney, subject to court determination, to "retain money of a client under a claim of right." Id. (emphasis added). Because Attorney retained papers, not money, section 481.14 does not help him.

Attorney does not make reference to the commingling issue or to Rule 1.15(a)(1), except to note that the Director found that his law firm had reduced the amount of personal funds in the trust account to an appropriate nominal amount by May 2013.